UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BRETT BABER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:18-CV-00465-LEW |
| | ) | |
| MATTHEW DUNLAP, | ) | |
| | ) | |
| Defendant. | ) | |

**JARED GOLDEN'S UNOPPOSED MOTION TO INTERVENE**

Pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B), Jared Golden moves to intervene as a Defendant in this matter. All parties consent to this motion. Additionally, in order to promote judicial economy and the orderly resolution of this matter, Golden requests that this Court waive the provision of Fed. R. Civ. P. 24(c) that Golden file a responsive pleading attached to this motion, and instead direct him to file on the same schedule that will apply to the Defendant in this litigation. Meanwhile, Golden's defense in this matter will be apparent from the brief that he will file in opposition to Plaintiffs' motion for a preliminary injunction. *Cf. Peaje Investments LLC v. García-Padilla*, 845 F.3d 505, 515 (1st Cir. 2017) ("[D]enial of a motion to intervene based solely on the movant's failure to attach a pleading, absent prejudice to any party, constitutes an abuse of discretion.") (brackets added).

Either Jared Golden or Bruce Poliquin is going to win the election to become the next Congressman from Maine's Second Congressional District. Thus, it should be

evident that Golden has a unique interest in the outcome of this litigation, both on his own behalf and on behalf of the approximately 130,000 Maine voters who cast their first-choice ballots for him and the thousands who made him their second choice in accordance with the ranked choice voting ("RCV") process. Golden seeks to intervene to prevent Plaintiffs, Brett Baber, Terry Hamm-Morris, Mary Hartt, and Bruce Poliquin (collectively, "Poliquin"), from using this Court to thwart the electoral process that has been approved by Maine voters twice and has been upheld, as applied to congressional races, three times by state and federal courts.

Through this litigation—filed *after* the polls closed on November 6 and *after* over 270,000 Maine voters cast their ballots with the understanding that the RCV system was the law of the land—Poliquin seeks to invalidate the will of the voters by enjoining the Secretary of State from counting the votes in accordance with state law. Poliquin could have joined his Party's challenge to this law before this Court last spring, or he could have moved expeditiously to file his own challenge on the same grounds he now raises when his Party's challenge was not successful. Instead, he waited until after all of the ballots in the election had been cast, and now seeks to change the rules of that election, severely prejudicing the voters who relied upon RCV in casting their ballots, and the candidates who they supported, whether as their first or second choices.

The Court should permit Golden to intervene as a defendant, both on his own behalf as the candidate who is most likely to suffer irreparable harm as a result of

Poliquin's efforts to change the rules after the fact, and on behalf of the voters who supported Golden over Poliquin and voted in reliance on and accordance with the RCV system. If Poliquin succeeds in this lawsuit, these voters will be effectively disenfranchised. While the Secretary of State has an interest in preserving the law's constitutionality, he cannot adequately represent the unique interests of Golden and these voters, including their rights to due process and the fundamental right to the franchise. Golden moves to intervene in this litigation to ensure that these rights are adequately protected.

**Background.** Ballots are still being counted, but it is evident at this point both that Golden and Poliquin were the top two vote getters in the November 6 election, and that neither candidate received over 50% of the vote. Thus, the Secretary of State, Defendant Matthew Dunlap, is required to determine the winner using the RCV system approved twice through popular referendum by the voters, 21-A M.R.S. § 723-A. As explained by Judge Levy in *Maine Republican Party v. Dunlap*, 324 F. Supp. 3d 202 (D. Me. 2018), the process works as follows:

> Under ranked-choice voting, the first round proceeds much in the same way it did under the plurality system: Each voter's first choice vote is counted, and if any candidate captures an outright majority of the first choice votes that candidate wins. But, if no candidate captures a majority of the first choice votes, there is an instant run-off. The candidate with the fewest first choice votes is eliminated, and all of the ballots that listed him or her as the first choice candidate are counted for their second choice candidate. The process repeats and eliminates more last place candidates until one candidate receives a majority of the votes.

*Id.* at 205 (citations omitted); *see generally* 21-A M.R.S. § 723-A; 29-250 C.M.R. ch. 535. At the conclusion of this process, the losing candidate can request a recount. 21-A M.R.S. § 737-A(5-A) (added by P.L. 2017, ch. 316, § 10); 29-250 C.M.R. ch. 536, § 2.

This lawsuit seeks to upset this process. Golden seeks to intervene to defend not only the process under which all candidates campaigned and citizens voted—thereby making the changing of the rules after the election fundamentally unfair and unconstitutional—but also the outcome of that process, namely, that a majority of the voters in Maine's Second Congressional District using the RCV system voted for Golden for Congress.

**Mandatory Intervention.** Pursuant to Fed. R. Civ. P. 24(a)(2), Golden can intervene as a matter of right if: (1) his application is timely; (2) he possesses "a direct and substantial interest in the subject matter of the litigation;" (3) the "disposition of the action may as a practical matter impair or impede [his] ability to protect [his] interest;" and (4) "[his] interest cannot be adequately represented by existing parties to the litigation." *Canadian Nat. Ry. Co. v. Montreal, Maine & Atlantic Ry. Inc.*, 2010 WL 5168003, *4 (D. Me. Dec. 10, 2010) (brackets altered and citing *Caterino v. Barry,* 922 F.2d 37, 39-40 (1st Cir. 1990)). Candidates elsewhere are routinely granted intervention under Rule 24(a)(2) in litigation that may affect their election. *See, e.g., Holblock v. Albany Cty. Bd. of Elections*, 233 F.R.D. 95 (N.D.N.Y. 2005); *Marshall v. Meadows*, 921 F. Supp. 1490 (E.D. Va. 1996). The same result should occur here.

Concerning the first factor, Golden's motion to intervene is unquestionably timely. We consider the next two factors together:

> The Court considers the second and third factors together, since the magnitude or extent of an intervenor's interest will be in part a function of how much the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

*Canadian Nat. Ry. Co.*, 2010 WL 5168003, at *5 (citations omitted).

In *Daggett v. Comm. on Governmental Ethics and Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999), the First Circuit concluded that prospective candidates who might seek public financing had an interest in the constitutionality of Maine's public financing statute that could be impaired or impeded by that litigation. "[T]he applicants belong[ed] to a small group, quite distinct from the ordinary run of citizens, who could expect to receive direct payments for their campaigns if the Reform Act [were] upheld but not otherwise." *Maine Republican Party v. Dunlap*, 2018 WL 2248583, *1 (D. Me. May 16, 2018) (quoting *Daggett*, 172 F.3d at 110) (brackets added by Court); *see also Marshall v. Meadows*, 921 F. Supp. at 1493 (Senator John "Warner has as a practical matter a vital interest in a procedure through which he is currently seeking election and toward which he has expended considerable money and time") (citation omitted); *Holblock*, 233 F.R.D. at 99 ("Candidates have certainly demonstrated an interest in the litigation and outcome of the election.").

Additionally, Golden has a vital interest in the outcome of this litigation on behalf of the majority of all voters who supported him over Poliquin using the RCV

system. *See, e.g., Bullock v. Carter*, 405 U.S. 134, 143 (1972) ("[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters.") (brackets added); *see also Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983) (allowing candidate to espouse interests of voters who supported candidate); *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (finding candidate had standing to bring claims of his voters concerning ballot access laws).

This interest is heightened when a lawsuit seeks to change the procedures governing how the election is decided after the election has occurred, which raises issues of due process and detrimental reliance that Golden is best positioned to assert. Such a "retroactive change in the election laws … implicate[s] fundamental fairness issues" for both candidates and the voters who support them. *Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995) (brackets and ellipsis added); *accord Griffin v. Burns*, 570 F.2d 1065, 1078–79 (1st Cir. 1978).

"As to the fourth factor, a putative intervenor generally 'need only make a minimal' showing that the representation afforded by a named party would prove inadequate.'" *Canadian Nat. Ry. Co.*, 2010 WL 5168003, at *7 (quoting *B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006)); *see Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). "Where the ultimate objectives of a party seeking to intervene and a named party are identical, there exists a 'rebuttable

presumption of adequate representation.'" *Portland Cellular P'ship v. Cape Elizabeth*, 2015 WL 12990147, *2 (D. Me. Feb. 3, 2015) (quoting *B. Fernández*, 440 F.3d at 546) (other citation omitted). "While the burden of rebutting this presumption is on the intervenor, it is not onerous—the intervenor need only show that the government's representation *may* be inadequate, not that it *is* inadequate." *Portland Cellular*, 2015 WL 12990147, at *2 (emphasis in original and citing *Conservation Law Found. Of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992)) (other citations omitted).

"One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party." *B. Fernández & Hnos., Inc.*, 440 F.3d at 546 (quoting *Glancy v. Taubman Cts., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004) ("Asymmetry in the intensity ... of interest can prevent a named party from representing the interests of the absentee.") (ellipsis added by Court) (other citation omitted)).

While the Secretary of State has an interest in defending the constitutionality of the statute, the State will not suffer the types of due process, fundamental fairness, and other constitutional injuries that threaten Golden and the voters who supported him over Poliquin. Indeed, in responding to complaints in the press from the Poliquin campaign about the conduct of the election, the Secretary of State explicitly drew a distinction between the election process and the election outcome: "My entire stock in trade here is based not on the outcome of the election but on voter confidence." Beth

Quimby, *Maine Secretary of state says Poliquin campaign's charges could erode confidence in voting system*, Sun Journal, Nov. 12, 2018, available at http://www.sunjournal.com/dunlap-concerns-raised-by-poliquin-could-undermine-public-confidence-in-voting-system/?utm_source=Headlines&utm_medium=email&utm_campaign=Daily .

Thus, Golden, on his own behalf and on behalf of his many supporters, has a uniquely personal interest in the outcome of this election distinguishable from the State's more general interest in implementing its election law. *Cf. Holblock*, 233 F.R.D. at 99 ("Candidates have a personal interest in winning and holding office, while the voters simply have an interest in having their votes counted and protected, regardless of who they actually voted for."); *Portland Cellular*, 2015 WL 12990147, at *2 ("Here, there is a difference in the kind of interests represented by Cape Elizabeth, which represents the public interest, and the Neighbors, who represent their own private interests."). As Judge Lynch explained:

> The rationale for intervention may have particular force where the subject matter of the lawsuit is of great public interest, *the intervenor has a real stake in the outcome* and the intervention may well assist the court in its decision through the production of relevant evidence and the framing of the issues.

*Daggett,* 172 F.3d at 116-17 (Lynch, J., concurring) (emphasis added). Because Golden's interest in this litigation is different in kind and degree from the Secretary of State's interest, Golden has made the "minimal" showing that the Secretary of State's

representation *may* be inadequate to protect his interest. Golden's motion to intervene as a matter of right should be granted.

**Permissive Intervention.** Alternatively, pursuant to Fed. R. Civ. P. 24(b)(1)(B), the Court may permit Golden to intervene if he "has a claim or defense that shares with the main action a common question of law or fact."  "In addition, 'permissive intervention ordinarily must be supported by independent jurisdictional grounds.'" *Penobscot Nation v. Mills*, 2013 WL 3098042, *2 (D. Me. June 18, 2013) (quoting *Int'l Paper Co. v. Town of Jay*, 887 F.2d 338, 346 (1st Cir. 1989)). "The First Circuit has noted that the threshold for permissive intervention is low, and that once the threshold requirements are satisfied, the district court may 'consider almost any factor rationally relevant.'" *Penobscot Nation*, 2013 WL 3098042, at *2 (quoting *Daggett*, 172 F.3d at 113) (other citation omitted).

What is good for the goose is good for the gander. If this Court has jurisdiction to consider Poliquin's constitutional attack on the electoral process and outcome, then this Court has jurisdiction to consider Golden's defense of that electoral process and outcome, both on his own behalf and on behalf of the voters who supported him over Poliquin under the RCV system. Poliquin seeks a judgment from this Court that the conduct of the election using Maine's ranked choice voting system violates the U.S. Constitution. Golden seeks to intervene as a defendant, raising a defense that, as a matter of federal constitutional law, Poliquin is not only wrong, but the relief he seeks

would violate important constitutional rights of both the other candidates and the voters who participated in this election with the understanding that it would be conducted in accordance with the RCV system. As such, Golden's defense shares common questions of law with Poliquin's claim—is it appropriate to invalidate an electoral process after the election has occurred, and does the U.S. Constitution prohibit the conduct of the election using Maine's ranked choice voting system?—and these questions arise under federal law, providing this Court with jurisdiction.

Once again, because Golden has an interest in the outcome of the election and not just in the election process, both on his own behalf and on behalf of voters who supported him over Poliquin using the RCV election process, he easily satisfies the "low" standard for permissive intervention. *Cf. Penobscot Nation*, 2013 WL 3098042, at *3-5 (although Attorney General had general interest in defending the State's regulatory authority over the Penobscot River, the private permit holders had specific interest in defending their permits under such regulatory authority, and thus should be granted permissive intervention). If this Court determines that Golden cannot intervene as of right, Golden's alternative motion for permissive intervention should be granted.

Jared Golden respectfully requests that his unopposed motion to intervene as a Defendant be granted.

Dated: November 9, 2018

/s/ Peter J. Brann
Peter J. Brann
pbrann@brannlaw.com
Michael E. Carey
mcarey@brannlaw.com
Eamonn R.C. Hart*
ehart@brannlaw.com
BRANN & ISAACSON
P.O. Box 3070, 184 Main Street
Lewiston, ME 04243-3070
(207) 786-3566

/s/James T. Kilbreth
James T. Kilbreth
jkilbreth@dwmlaw.com
David M. Kallin
dkallin@dwmlaw.com
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101-2480
(207) 772-1941

Marc E. Elias**
Elisabeth C. Frost**
John M. Geise**
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
(202) 654-6200
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

*Counsel for Proposed Intervenor Defendant Jared Golden*

*Admitted in Maine, admission to
 District of Maine pending
**Admission for Pro Hac Vice pending

## CERTIFICATE OF SERVICE

I certify that on November 9, 2018, I filed the foregoing document with the Clerk

of the Court using the CM/ECF system, which will send notice to counsel of record.

/s/ Peter J. Brann
Peter J. Brann