UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRETT BARBER, TERRY HARM, MARY HARTT, and BRUCE POLIQUIN </br></br>Plaintiffs, </br></br>v. </br></br>MATTHEW DUNLAP, </br>Secretary of State of Maine, </br></br>Defendant. | No. 1:18-CV-00465-LEW |

### DEFENDANT-INTERVENOR JARED GOLDEN'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

Defendant-Intervenor Jared Golden ("Intervenor"), by and through his undersigned counsel, respectfully requests that this Court deny Plaintiffs' Motion for a Temporary Restraining Order (ECF No. 3).

In 2016, the people of Maine adopted the ranked choice voting ("RCV") system. Multiple lawsuits were filed in state and federal court challenging the RCV system. All failed, making it clear that RCV would be used in the 2018 general election. A hard-fought election campaign ensued. It was clear that votes would be tabulated in that election under the RCV system. Plaintiffs did not file suit or seek to enjoin use of the RCV system before Election Day.

Now, late on the afternoon of November 13—a week after voting ended and likely less than 24 hours before the Secretary of State is set to finish the tabulation of the votes cast in the election—Plaintiffs declare a sudden emergency, and seek the utterly extraordinary remedy of a federal order directing state officials to halt the tabulation of votes in accordance with state law on less than 24 hours' notice and without full briefing.

The apparent basis of this "emergency" is that Plaintiff Bruce Poliquin, the incumbent congressman in Maine's Second Congressional District ("CD-2"), seemingly recognizes that—although the tabulation has not been completed—it is quite possible that he will not be elected under Maine law. In response, Plaintiffs ask that the rules of the election be changed after all of the voters have cast their ballots under those rules.

The defendant, the Secretary of State, is best-positioned to explain to the Court in detail why the relief Plaintiffs seek in this motion—halting the count entirely—is unwarranted, unnecessary, and harmful to the process. Intervenor submits this brief to provide further illustration of why Plaintiffs' extraordinary request fails every step of the analysis.

Plaintiffs have no likelihood of success on the merits. They rely on unsupportable constitutional and statutory arguments, any of which could have been brought months ago—all the pertinent facts were known and the case law upon which they rely (although inapposite) is far from new. Further, their purported "injuries" were wholly predictable. And the remedy that they seek – to halt the operation of Maine's election laws and stop the count of all of the lawful counted ballots in the CD-2 race in the middle of that process – not only cannot be justified as a matter of law, it threatens the voting rights of thousands of Maine voters who participated in the November election with the understanding that RCV was the law of the land. Every voter in Maine cast their ballot in reliance on the fact that the RCV system would be used. The declarations of some such voters are attached to this brief. These declarations illustrate the real world consequences of Plaintiffs' extraordinary motion—these voters listed another candidate as their first choice, but would have voted for Jared Golden in the absence of the RCV system. Given time, Plaintiffs have no doubt they could obtain affidavits from countless other voters who

are similarly at risk of being totally disenfranchised as a result of Plaintiffs' thirteenth-hour litigation.

There is no precedent for granting a temporary restraining order under these circumstances—none. The Secretary of State should be permitted to conclude the tabulation and the Plaintiffs' preliminary injunction motion set for briefing and hearing in the ordinary course, to allow the Court full opportunity to consider the matters before it.

## I.  FACTS

**A.  Maine's RCV System**

Poliquin seeks to prevent the use of the ranked choice voting ("RCV") system approved twice through popular referendum by the voters, and upheld, as applied to congressional races, three times by state and federal courts, to determine the winner of Second Congressional District race. *See Opinion of the Justices*, 162 A.3d 188 (Me. 2017); *Maine Senate v. Sec'y of State*, 183 A.3d 749 (Me. 2018); *Maine Republican Party v. Dunlap*, 324 F. Supp. 3d 202 (D. Me. 2018). Only those facts most relevant to the instant motion are set out here.

After it became clear that RCV would be used for the first time starting in the June 2018 primary, multiple lawsuits ensued. On April 17, 2018, the Maine Supreme Court resolved various state law issues and effectively "declar[ed] that ranked-choice voting shall be employed in the June 12, 2018, primary election." *Maine Senate*, 183 A.3d at 759. Thereafter, this Court rejected a constitutional claim asserted by the Maine Republican Party. *See Maine Republican Party*, 324 F. Supp. at 207.

Thus, since at least May—almost half a year ago—it has been clear that RCV would be used in the 2018 General Election.

**B.     The 2018 General Election**

The General Election was held on November 6, 2018. The Secretary of State began the ballot counting process on November 9, 2018. It is anticipated that it will take until November 14 or November 15, 2018, for this process to be completed, at which time the RCV tabulation process will be run. Based on the unofficial reported vote share of the candidates, voters who put William Hoar or Tiffany Bond in their first-choice slot, or Hoar and Bond in their first and second-choice slots in some order, will have their votes allocated to their highest-ranked remaining candidate, either Poliquin or Golden. At this point, either Poliquin or Golden will be declared the winner as the preferred candidate of over 50% of the voters. But it is important to note that, notwithstanding Poliquin's assertion, as of this moment, there has not even been an official determination of the leading candidate after the first round of tabulation.

While the numbers dictate that the candidate preferred by the majority of the voters will be either Poliquin or Golden, it cannot yet be said which candidate will emerge as the preferred choice of the voters. The difference in vote share between Poliquin and Golden based solely on the voters' first choice is currently less than 0.7%. Which one will emerge as the preferred choice of the voters in this election cannot be known until the RCV process is completed in accordance with Maine law. After the RCV tabulation has run, the losing candidate will have five days to request a recount. 21-A M.R.S. § 737-A(5-A) (added by P.L. 2017, ch. 316, § 10); 29-250 C.M.R. ch. 536, § 2.

Rather than allow the RCV process to run its course to identify the majority of the voters' preferred candidate in this race, Plaintiffs filed this lawsuit earlier today. ECF No. 1. They filed a motion for a preliminary injunction together with their Complaint, but did not seek an expedited briefing schedule. ECF No. 3. Late this afternoon, they filed the instant motion for a TRO,

demanding that the matter be set for a hearing in less than 24 hours, and that the Court suspend the Secretary's tabulation of the votes, which is presently underway. ECF No. 13.

## II. ARGUMENT

### A. Standard

A temporary restraining order is an extraordinary remedy that should seldom be granted, except when a litigant is facing a threat of irreparable harm "before the adverse party can be heard in opposition," Fed. R. Civ. P. 65(b)(1), and where the movant can show that (1) it is likely to succeed on the merits; (2) there is a likelihood it will suffer irreparable harm absent an injunction; (3) the balance of the hardship to the movant outweighs the harm that will be done to the nonmovants if an injunction is issued; and (4) public interest weighs in favor (or at least not against) issuing the injunction. *See Charalambous v. Charlambous*, No. 2:10-CV-375, at *1 (D. Me. Sept. 21, 2010).

In any case, the movant's failure to carry the burden on any of these requirements is reason enough to deny the motion, but courts are particularly reluctant to do where the "emergency" that gives rise to the purported need for immediate relief, necessitating a decision without sufficient time for the parties to brief, and the court to carefully consider, the issues, is of the plaintiffs' own making. *See, e.g.*, *Respect Maine PAC v. McKee*, 622 F.3d 13, 16 (1st Cir. 2010) (denying motion for emergency motion to enjoin operation of challenged provision of Maine's election laws pending appeal where the "'emergency' is largely one of [the plaintiffs'] own making" as they were "well aware of the requirements of the election laws," but chose not to bring suit until "shortly before the November . . . elections" and "until at least six months after roughly 280 candidates had declared their intention to rely" on the challenged laws, and the case law on which the plaintiffs relied was not new).

Here, Plaintiffs fall well short of meeting their burden.

B.     **There Is No "Emergency" Warranting the Extraordinary Relief Plaintiffs Seek—They Cannot Prove They Will Suffer *Any* Injury if the Motion Is Denied**

At the outset, the Court should deny the motion because Plaintiffs will not suffer any injury at all, much less an irreparable one, if the Court does not grant their temporary restraining motion. A temporary restraining order is extraordinary relief appropriate only in emergency circumstances. Here, there is no emergency. Poliquin's alleged harm results from his own participation in this ranked choice election in which the rules were clear and without challenging those rules in advance; his "harm" is self-inflicted:

> Plaintiffs helped create the situation necessitating preliminary injunctive relief by their delay in bringing the action. . . . Plaintiffs failed to offer any reason for their delay in filing this action. That delay, however, has contributed in significant part to Plaintiffs' request for a somewhat urgent preliminary injunction.

*League of Women Voters v. Diamond*, 923 F. Supp. 266, 275 (D. Me. 1996) (ellipsis added); *accord Respect Maine PAC*, 623 F.3d at 16 ("In determining the weight to be accorded to the appellants' claims, we also note that this 'emergency' is largely one of their own making.") (failure to bring election lawsuit until August 5 concerning November 2 election); *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 49 (D. Mass. 2005) (citing *San Francisco Real Estate Inv. v. Real Estate Inv. Tr. of Am.*, 692 F.2d 814, 818 (1st Cir. 1982)) (finding that plaintiff's alleged irreparable harm was self-inflicted when it could have been avoided had her pursuit of a judicial remedy been more expeditious).[1]

Plaintiffs allege that their rights will be violated should the Secretary complete the tabulation under Maine's RCV process, but the affidavits Plaintiffs offer with their motion utterly fail to show how the counting process will in any way cause them any injury. The affidavits do not even begin to explain how Plaintiffs would be harmed if the Secretary of State

---

[1] Indeed, unwarranted delay in bringing a challenge to the rules of an election can result in the ultimate relief—not just preliminary relief—being barred by the doctrine of laches. *Dobson v. Dunlap*, 576 F. Supp. 2d 181, 188 (D. Me. 2008). Here, Poliquin declined to participate in any of the previous lawsuits regarding RCV.

is permitted to complete its count. Indeed, Plaintiffs offer no specific facts to support their claim of irreparable harm, relying instead on nothing "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action [which] will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (brackets added). For good reason—their vote will remain cast for Poliquin. Even assuming for argument's sake that the individual voter Plaintiffs would suffer some legally cognizable harm if the Secretary merely tallies up the votes under the RCV system, it is not harm that is *irreparable* by any stretch of the imagination. If the Secretary of State completes the RCV process and the Court then considers Plaintiffs' preliminary injunction motion and finds in their favor, the parties and the Court will have all rounds of tabulation to evaluate and can decide Plaintiffs' claims; the counting itself does not in any way harm the Plaintiffs, and does not justify a federal court intervening to stop a state election in the middle of counting the votes.

C. **Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits**

Even assuming there was any reason to act on Plaintiffs' motion now—which is there is not—Plaintiffs cannot demonstrate a likelihood of success on the merits. The hodgepodge of claims Plaintiffs set out in their Complaint and preliminary injunction motion—which they attempt to incorporate by reference in their motion for temporary restraining order—are muddled at best. Even upon initial review, it appears that Plaintiffs have confused and misstated different areas of voting jurisprudence. These areas of law are complex with long-standing and well-established authority, none of which support Plaintiffs' claims here.

For example, Plaintiffs claim that RCV violates the "substantive plurality provisions of" Article I, section 2 of the U.S. Constitution. That section of the Constitution will be searched in vain for any such provision. In relevant part, it provides that "[t]he House of Representatives shall be composed of Members chosen every second Year by the People of the several States."

Here, the people of Maine have decided to choose their representatives through RCV. Nothing in Article I, section 2 forbids that choice. No court has ever invalidated a method of choosing a winner in a congressional election based on this provision of the Constitution.

Arguing to the contrary, Plaintiffs rely on a single line in a single case—*Phillips v. Rockefeller*, 435 F.2d 976 (2d Cir. 1970)—which Plaintiffs take out of context. Plaintiffs claim *Phillips* stands for the proposition that Article I, section 2 "has always been construed to mean that the candidate receiving the highest number of votes at the general election is elected, although his vote be only a plurality of all votes cast." *Id.* at 980. This is misleading at best. In *Phillips*, the Second Circuit rejected the claim that the Seventeenth Amendment required United States senators to be elected by a *majority* vote as opposed to a *plurality*. The court did not hold that senators *had* to be elected by plurality vote—it held that the Constitution did not require Senators to be elected by a *majority* vote. *Id.* at 979-80. And in doing so it implicitly recognized that voters could instead choose to elect their representatives by a majority, including by using run off elections. *Id.* Nothing in *Phillips* even remotely suggests that Article I, section 2 bars the people of a state from choosing to select their representatives through RCV.

Plaintiffs do not acknowledge that the Constitution elsewhere grants extremely broad and express authority to States to regulate the manner of congressional elections, U.S. Const. Art. IV, § 4, cl. 1. This is the clause that governs the selection of members of Congress, and these are "'comprehensive words,' which 'embrace authority to provide a complete code for congressional elections[.]'" *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S 1, 8-9 (2013) (quoting *Smiley v. Holm,* 285 U.S. 355, 366 (1932)); *see generally Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652 (2015). In *Smiley*, that state authority includes the "counting of votes." *Smiley*, 285 U.S. at 366. That provision also includes state authority over

recounts. *See Roudebush v. Hartke,* 405 U.S. 15, 25 (1972). The Constitution allows Maine to conduct elections using ranked choice voting.

Likewise, every court that has considered equal protection and due process claims has concluded that RCV is constitutional. *See Dudum v. Arntz*, 640 F.3d 1098 (9th Cir. 2011); *Minnesota Voters Alliance v. City of Minneapolis*, 766 N.W.2d 683 (Minn. 2009); *McSweeney v. City of Cambridge*, 422 Mass. 648, 665 N.E.2d 11 (1996); *Stephenson v. Ann Arbor Bd. of City Canvassers*, No. 75-10166-AW (Mich. Cir. Ct. 1975).

In short, Plaintiffs' arguments on the merits cannot be accepted at face value. The Court cannot and should not find that Plaintiffs have a likelihood of succeeding on the merits of their claims based on their say-so. The Court should not decide these important issues without giving the parties time to prepare thoughtful briefing on these issues so that the Court can make an informed decision.

**D.     The Public Interest and Balancing of the Equities Weigh Heavily in Favor of Denying Plaintiffs' Motion**

Compared to the speculative, self-inflicted injuries Plaintiffs proffer, the extraordinary injury caused by *granting* Plaintiffs' motion is clear. The voters of Maine participated in the 2018 election and cast their votes believing that RCV was the law of the land. Plaintiffs seek to change the rules after the election is over. Granting the relief Plaintiffs seek here would be akin to promising voters that they can cast absentee ballots—and then allowing a candidate who believes those absentee ballots will go against him or her in the final count to invalidate all absentee ballots after the election is over and while the Secretary of State is in the process of counting them.

The harm to voters who followed the rules is palpable and urgent. Attached to this brief are declarations from Mainers who cast their ballot in full reliance on the RCV system. For

example, Ellyn W. Smith explains that she voted for three candidates ranked as follows: (1) Tiffany Bond, (2) Jared Golden, and (3) William Hoar. Declaration of Ellyn W. Smith in Support of Intervenor Jared Golden's Opposition to Plaintiffs' Motion for a Temporary Restraining Order ¶ 2. She ranked the candidates in this order for one reason and one reason only—her "understanding that [her] vote in each round of voting would go to [her] highest-ranked candidate remaining in that round." *Id.* She specifically explains that had the RCV system *not* been in effect, she "would have voted for Jared Golden." *Id.* ¶ 4. If Plaintiffs succeed in changing the rules after the fact, Mainers like Ms. Smith will be deprived of the opportunity to vote for the candidate they would have selected.

By contrast, *none* of the Plaintiffs are at any risk of having their vote negated – even if they ultimately lose on the merits of their claims. Each admits that they voted for Poliquin and Poliquin only, who is one of the two front runners. The only people who are at risk of being disenfranchised—and suffering truly irreparable harm—are the Maine voters who they seek to suppress with this lawsuit. If the rules can be changed after all the votes have been submitted and changed in such a way moreover to entirely negate thousands of voters' ballots entirely, then public trust in both Maine elections and the rule of law is likely be severely wounded.

The public interest supports maintaining the orderly operation of Maine's election laws and avoiding the "chaotic and disruptive effect upon the electoral process" of a preliminary injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944-45 (2018); *Respect Maine PAC*, 622 F.3d at 16; *Alexander v. First Wind Energy LLC*, No. 2:11-CV-364-GZS, 2011 WL 5325297, at *2 (D. Me. Nov. 2, 2011) ("the Court notes that the public interest is best served by the Court abstaining from any action that might impact on the upcoming election."); *League of Women*

*Voters*, 923 F. Supp. at 274-75 (Court cannot ignore the chaos and voter disappointment which could result from an improvidently granted order in an election context).

Thus, the public interest here is clear. Not only does the public have an interest in having the count completed in accordance with the duly enacted laws of Maine—the RCV system directedly and repeatedly ratified by the people—but also in having this decided on a full and considered record with sufficient time for all interested parties to weigh in.

### III.   CONCLUSION

For the reasons stated herein, Intervenor respectfully requests that this Court deny Plaintiffs' Motion for a Temporary Injunction.


Dated:  November 13, 2018                                    /s/ Peter J. Brann
                                                             Peter J. Brann
                                                             pbrann@brannlaw.com
                                                             Michael E. Carey
                                                             mcarey@brannlaw.com
                                                             Eamonn R.C. Hart*
                                                             ehart@brannlaw.com
                                                             BRANN & ISAACSON
                                                             P.O. Box 3070, 184 Main Street
                                                             Lewiston, ME 04243-3070
                                                             (207) 786-3566

                                                             /s/James T. Kilbreth
                                                             James T. Kilbreth
                                                             jkilbreth@dwmlaw.com
                                                             David M. Kallin
                                                             dkallin@dwmlaw.com
                                                             Drummond Woodsum
                                                             84 Marginal Way, Suite 600
                                                             Portland, ME 04101-2480
                                                             (207) 772-1941

Marc E. Elias**
Elisabeth C. Frost**
John M. Geise**
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
(202) 654-6200
MElias@perkinscoie.com
EFrost@perkinscoie.com
JGeise@perkinscoie.com

*Counsel for Defendant Jared Golden*

*\*Admitted in Maine, admission to
 District of Maine pending*

*\*\*Admission for Pro Hac Vice pending*

## CERTIFICATE OF SERVICE

I certify that on November 13, 2018, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice to counsel of record.

/s/ Peter J. Brann
Peter J. Brann